**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 16-129-DLB-CJS

JOHN SCHWEITZER                                                                 PLAINTIFF

vs.                                  **MEMORANDUM OPINION AND ORDER**

WAL-MART STORES, INC.                                                     DEFENDANT

* * * * * * * * * * * * *

## I.      INTRODUCTION

This matter is before the Court upon Defendant Wal-Mart Stores, Inc.'s (Wal-Mart)
motion for summary judgment (Doc. # 12).  Plaintiff having responded to the motion (Doc.
# 15), and Wal-Mart having filed its reply (Doc. # 18), the motion is ripe for review.  For
the reasons stated below, the Court finds the motion to be well-taken, and will grant
summary judgment in favor of Wal-Mart.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff John Schweitzer worked for Advantage Sales and Marketing ("ASM"),
representing sales of GlaxoSmithKline products to retail stores.  (Doc. # 12-2 at 6).  His
job required him to go into retailers, such as Wal-Mart or Kroger, and ensure that the
brands he represented were properly tagged on the shelves and were stocked on shelves
in an appealing manner.  *Id.* at 6-7.  In addition, Plaintiff would construct displays for his
products when necessary, and talk to department heads about brand volume, targeted
advertising, and freshness.  *Id.* at 7.   Plaintiff indicated in his deposition that Wal-Mart's

employees engaged in the same type of work Plaintiff did, for different products.  *Id.* at 7.

The Wal-Mart in Maysville stocked approximately 150 of the brands Plaintiff represented,

including Tums, Nicorette, and Abreva.  *Id.* at 6.  Plaintiff's work for ASM took him to that

store once per month from 2002 until early 2015.  *Id.* at 18.

On March 2, 2015, Plaintiff arrived at the Wal-Mart in Maysville at about 9:00 a.m.,

coming from a previous stop at the Maysville Kroger.  *Id.* at 18.  In a time period spanning

approximately three minutes, Plaintiff exited his car, started walking across the parking

lot, and slipped on a patch of ice 15-20 feet from his car.  *Id.* at 18, 21-22.  As a result,

Plaintiff filed a workers'-compensation claim, indicating that he was injured doing work for

ASM at Wal-Mart.  *Id.* at 10; *see also* Doc. # 18-1 at 1 ("Describe how the injury occurred:

Walking into Walmart in Maysville, KY to deliver products, slipped and fell on ice injuring

arm.")

On February 29, 2016, Plaintiff filed a complaint against Wal-Mart in the Mason

County Circuit Court, alleging that as the result of his fall, he has sustained a permanent

and serious injury to his right shoulder.  (Doc. # 1-3, at 1-2).  Plaintiff alleges three counts

against Wal-Mart: (1) negligent inspection and maintenance; (2) premises liability; and (3)

negligent hiring and supervision.  *Id.* at 2-3.  Specifically, Plaintiff seeks compensatory

damages and claims that as a result of Wal-Mart's negligence and recklessness, he has

suffered permanent injuries, resulting in past, present, and future medical expenses, lost

wages, and great mental and physical pain and suffering.  *Id.* at 3-4.

On August 2, 2017, Wal-Mart filed a Motion for Summary Judgment, arguing that

Plaintiff had already been compensated for his injuries through the Kentucky Workers'

Compensation program, and as an up-the-ladder employer, Wal-Mart was immune from

tort liability for injuries incurred on its premises and subsequently compensated under a workers' compensation claim. (Docs. # 12 and 12-1). Plaintiff responded in opposition (Doc. # 15), to which Wal-Mart replied. (Doc. # 18).

## III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of "showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the moving party has met its burden, the nonmoving party must cite to evidence in the record upon which "a reasonable jury could return a verdict" in its favor; a mere "scintilla of evidence" will not do. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986). At the summary-judgment stage, a court "views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

### B. Kentucky law provides up-the-ladder immunity for contractors.

**"**The Kentucky Workers' Compensation Act is a legislative remedy which affords an injured worker a remedy without proof of the common law elements of fault." *General Electric Co. v. Cain*, 236 S.W.3d 579, 606 (Ky. 2007). On balance, two sections of this Act, when read in conjunction, give a premises owner immunity from tort liability with respect to tort-related injuries so long as the premises owner had workers' compensation coverage and the worker was injured performing work of the type that was a regular or recurring part of the premises owner's business. *Cain*, 236 S.W.3d at 585 (discussing

Ky. Rev. Stat. Ann. §§ 342.690(1) and 342.610(2)).  The premises owner asserting this up-the-ladder defense has the burden of both pleading and proving the affirmative defense.  *Id.*

"Regular or recurring" has been interpreted to mean that the type of work is performed as part of the usual, normal, or customary part of the particular business, which one would expect the employees to normally perform, and that it is repeated "with some degree of regularity."  *Id.* at 588.  The test to determine whether the type of work is that which would be normally performed by the business is a relative test, not an absolute one.  *Id.*  And proof of purchase of a workers'-compensation policy, absent evidence that the policy was deficient, is a sufficient showing to "invoke the exclusive remedy provision of [Ky. Rev. Stat. Ann.] § 342.690(1)."  *Id.* at 605.

## C.    Plaintiff's work for Wal-Mart was "regular or recurring."

The Sixth Circuit has crafted the "regular or recurring" analysis into a three-part inquiry, asking: (1) whether the injured person was "hired to perform" the work for the contractor,[1] (2) whether the injured person's work for the contractor was a customary, usual, or normal part of the contractor's business, or work that the subcontractor repeated with regularity, and (3) whether the injured person's work would normally be performed or be expected to be performed by the contractor's employees.  *Black v. Dixie Consumer Prods., LLC*, 835 F.3d 579, 585 (6th Cir. 2016) (internal citations omitted).

---

[1]      The *Black* opinion, citing *Cain*, suggests that the first inquiry is whether the subcontractor was "hired to perform" work for the contractor. But the *Cain* Court looked to whether the employees of the subcontractors were "hired to perform" the work for the contractor, so as to compare whether that work would be of the type that the contractor's employees would normally perform, or be expected to perform. The Court has paraphrased the language in *Black* to account for a more accurate reading of *Cain*.

Wal-Mart has satisfied each of the three prongs of the "regular or recurring" inquiry. Plaintiff was hired to perform the work at Wal-Mart's Maysville store, among others. (Doc. # 12-2 at 6). Wal-Mart has shown that Plaintiff performed the same or similar work once per month for over a decade. *Id.* at 18. And Plaintiff testified that Wal-Mart's employees performed similar work as Plaintiff, but for different products. *Id.* at 7. Therefore, Wal-Mart has met its burden of showing that the work Plaintiff did was "regular or recurring."

Similarly, in *Mueller v. 84 Lumber Co.*, No. 3:15-cv-838-JHM, 2016 WL 5868087 (W.D. Ky. Oct. 6, 2016), the court found that 84 Lumber had met each of these prongs in granting summary judgment on an action brought by the plaintiff for an injury incurred while on 84 Lumber's premises. The plaintiff was employed by a company contracted by 84 Lumber to deliver lumber and other goods to 84 Lumber's customers on a regular basis, and testimony showed that this type of work was provided by 84 Lumber through contracted delivery drivers (such as the plaintiff), or through 84 Lumber's own employees. *Mueller*, 2016 WL 5868087 at *2-3. Thus, 84 Lumber was an up-the-ladder employer and immune from liability for the plaintiff's injury.

In another case, the Sixth Circuit found that that the employee of a contractor who had been injured while he was mowing grass was doing "regular and recurring work" when he was injured. *Himes v. United States*, 645 F.3d 771, 781-82 (6th Cir. 2011) (citing *Cain*, 236 S.W.3d at 588) ("[Plaintiff has] failed to come forward with any specific facts to dispute the facts that mowing by [the plaintiff] at the [Blue Grass Army Depot ("BGAD")] is regularly performed, that it is considered ordinary maintenance work, or that such work [is also] done by BGAD employees.").

In contrast, Plaintiff's arguments regarding the "regular and recurring" analysis are not tenable. Broadly speaking, Plaintiff argues that he was not yet working for Wal-Mart at the time he was injured, removing Wal-Mart's up-the-ladder immunity. (Doc. # 15 at 5-9). But neither the case law he cites—*McMillen v. Ford Motor Co.*, No. 3:07-cv-309, 2009 WL 5169871 (W.D. Ky. Dec. 20, 2009)—nor his argument—that because he had not yet walked into Wal-Mart's building or written on the sign-in sheet, he was not yet working for Wal-Mart—are persuasive.

First, *McMillen* is inapposite. In *McMillen*, the plaintiff was employed as an electrician and a superintendent by a company subcontracted by a contractor to the defendant. *McMillen*, 2009 WL 5169871 at *5. Although he spent most of his time at the defendant's worksite, had his own trailer at the worksite, and did electrical work almost exclusively for defendant, this did not guarantee that all work done on the worksite was for the defendant. *Id.* On the day that he was injured, the plaintiff had been evaluating a worksite for a proposed bid by his employer, which would be then submitted to and modified by the defendant's contractor before being submitted to the defendant. *Id.* There was no guarantee of acceptance by the defendant. *Id.* As a result, the court found that the work the plaintiff had been doing when he was injured was solely for his actual employer—the subcontractor—and did not create up-the-ladder immunity for the defendant. *Id.* at *7. In contrast, Plaintiff was on Wal-Mart's premises to do exactly the work that ASM was contracted by Wal-Mart to do. (Doc. # 12-2 at 6, 18).

Second, Plaintiff's broader argument that he had not yet begun work for Wal-Mart because he was only in the parking lot is equally unpersuasive. Plaintiff argues that he "fell prior to ever entering [Wal-Mart's] store, [ ] had not signed the vendor log to begin his

work and thus was not conducting any work in [Wal-Mart's] store at the time of the accident." (Doc. # 15 at 6). In addition to being contrary to Kentucky case law, this argument is illogical. The Court declines to adopt an arbitrary rule that requires presence inside a building, or the act of clocking or signing in, before workers'-compensation coverage applies.

Finally, Plaintiff's broader argument ignores the "purpose of Ky. Rev. Stat. Ann. 342.610(2) [, which] is not to shield owners or contractors from potential tort liability but to assure that contractors and subcontractors provide worker's compensation coverage." *Cain*, 236 S.W. 3d at 587. Plaintiff was on Wal-Mart's premises to do the work ASM had hired him to do (Doc. # 12-2 at 18), just as one of Wal-Mart's employees would be on the premises to do the work Wal-Mart had hired him or her to do. Where an employee sustains a work-related injury on premises controlled by the employer, that employee is eligible for workers' compensation benefits. *Jackson Purchase Med. Assoc. v. Crossett*, 412 S.W.3d 170, 172 (Ky. 2013); *see also Pierson v. Lexington Public Library*, 987 S.W.2d 316, 318 (Ky. 1999) (holding that an employer was liable for workers' compensation benefits to a worker who injured himself on the way to work, where the employee was injured in a garage that the employer had some control over). These workers'-compensation benefits provide an exclusive remedy against the employer, precluding additional liability for the injury. Ky. Rev. Stat. Ann. § 342.690(1). If that same employee had sustained the same injury as Plaintiff, he would be eligible for workers' compensation. *Crossett,* 412 S.W.3d at 173. And under § 342.690(1), workers' compensation, once demanded, would be that employee's sole remedy for the employer's liability.

Placing Plaintiff in the shoes of that employee should lead to the same result. Plaintiff was injured on Wal-Mart's premises, which Wal-Mart admits full control of (Doc. # 18-2), moving from his car into the confines of the store, with the sole purpose of performing the work ASM was subcontracted to do. (Doc. # 12-2 at 18). Plaintiff requested—and received—workers'-compensation benefits for his injury (Docs. # 12-2 at 10 and 18-1 at 1), without needing to file suit. Because Plaintiff was compensated through the workers'-compensation program, he is now precluded from seeking additional money on the grounds of tort liability.

Because Plaintiff was engaged in "regular or recurring" work for Wal-Mart when he was injured, the sole remaining question in determining if Wal-Mart enjoys immunity as an up-the-ladder employer is whether Wal-Mart had workers'-compensation coverage at the time of the injury. It most certainly did.

### D. Wal-Mart had workers-compensation coverage at the time of the injury.

Wal-Mart satisfies its burden of showing the coverage component of the up-the-ladder liability test. Wal-Mart has included with its Motion for Summary Judgement a document showing that it had workers'-compensation insurance on the date of the injury, March 2, 2015. (Doc. 12-4). This document shows that an insurer—Marsh USA, Inc.— covered the Maysville, Kentucky store against workers'-compensation claims under policy number 037083149, effective from September 15, 2014 through September 15, 2015. *Id.* This is sufficient to show that Wal-Mart has "secure[d] payment of compensation as required by [the workers' compensation statutes.]" Ky. Rev. Stat. Ann. § 342.690(1).

Plaintiff argues that that the workers'-compensation coverage was deficient because the Kentucky Supreme Court has since found that one section of the Kentucky Workers' Compensation Act is unconstitutional. (Doc. # 15 at 8-10). In support, Plaintiff cites the recent Supreme Court of Kentucky case *Parker v. Webster Cty. Coal, LLC*, 529 S.W.3d 759 (Ky. 2017). The majority in *Parker* found that one section of the Kentucky workers'-compensation scheme—§ 342.730(4)—violated older workers' right to equal protection by treating "injured older workers who qualify for normal old-age Social Security retirement benefits differently than it treats injured older workers who do not qualify." *Parker*, 529 S.W.3d at 768. This section had provided for the reduction in number of weeks of benefits available to injured workers as those workers approached and then surpassed the age of Social Security eligibility. *Id.* at 767-68. Comparing the rights of these workers to those of another group—Kentucky teachers—the court determined that § 342.730(4) "invidiously discriminates against those who qualify for one type of retirement benefit (social security) from those who do not qualify for the that type of retirement benefit but do qualify for another type of retirement benefit (teacher retirement)." *Id.* at 769.

Plaintiff argues that because he received fewer benefits than others under the now-unconstitutional section, this has rendered Wal-Mart's insurance policy deficient. But by declaring Wal-Mart's workers'-compensation coverage deficient because of *Parker*, Plaintiff erroneously conflates two schema—one that provides for employers to pay into the workers'-compensation system, and one that provides for employees by paying out of the workers-compensation system. They are not the same. Section 342.690(1) requires an employer to secure payment of compensation as required by the Kentucky

Workers' Compensation Act, not to ensure that the Kentucky Worker's Compensation Act is constitutionally sufficient. Plaintiff's argument is unavailing, and Wal-Mart has established that it had a valid and covering workers' compensation insurance policy.

To summarize, there is no genuine dispute as to any material fact which would preclude summary judgment here. Wal-Mart has met its burden of showing that it is an up-the-ladder employer for purposes of Plaintiff's injury, and is therefore immune from Plaintiff's tort claims arising out of the same injury.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)    Defendant's Motion for Summary Judgment (Doc. # 12) is **GRANTED**; and

(2)    Plaintiff's personal-injury claim is **DISMISSED WITH PREJUDICE**; and

(3)    A Judgment in favor of Defendant shall be filed contemporaneously herewith.

This 20th day of December, 2017.



Signed By:

*David L. Bunning*   *DB*

**United States District Judge**

K:\DATA\Opinions\Covington\2016\16-129 Schweitzer v. WalMart MSJ MOO.docx